1
2
3
4

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

5

6

PAUL B.,

Case No. C20-881 TLF

7
                              Plaintiff,

8
       v.

ORDER REVERSING AND
REMANDING – FOR AN AWARD
OF BENEFITS

9
COMMISSIONER OF SOCIAL
SECURITY,

10
                              Defendant.

11

12         Plaintiff has brought this matter for judicial review of defendant's denial of his

13   application for disability insurance benefits. The parties have consented to have this

14   matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Fed. R. Civ. P.

15   73; Local Rule MJR 13.

16         Plaintiff's application for disability insurance benefits was filed in September

17   2016, alleging his disability began on October 17, 2002. AR 214–15, 844. Plaintiff's date

18   last insured was December 31, 2006. AR 847. Administrative Law Judge ("ALJ")

19   Timothy Mangrum conducted a hearing on April 12, 2018, after which he issued a

20   decision finding plaintiff not disabled. AR 24–34, 113–44. On May 28, 2019, Magistrate

21   Judge David W. Christel entered an order granting the parties' stipulated motion for

22   remand. AR 926–27.

23
24
25

On remand, ALJ Mangrum held a new hearing on February 12, 2020. AR 861–80. ALJ Mangrum issued a new decision on April 3, 2020, finding plaintiff had a severe impairment of degenerative disc disease, but was not disabled. AR 844–54. Plaintiff seeks review of ALJ Mangrum's April 2020 decision.

## I.   ISSUES FOR REVIEW

A.   Did the ALJ harmfully err in rejecting plaintiff's symptom testimony?

B.   Did the ALJ harmfully err in rejecting the opinions of treating surgeon Peter Kinahan, M.D.?

C.   Did the ALJ harmfully err in rejecting the opinions of examining doctors David Green, M.D., Mark Fishel, M.D., Myron Isaacs, M.D., and Robert Price, M.D.?

## II.   DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 404.1520. The ALJ assesses the claimant's residual functional capacity ("RFC") to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Ford v. Saul,* 950 F.3d 1141, 1154, 1159 (9th Cir. 2020). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

ORDER REVERSING AND REMANDING – FOR AN
AWARD OF BENEFITS - 2

197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.* The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.*

The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009) (citations omitted).

### A.    The ALJ Harmfully Erred in Rejecting Plaintiff's Symptom Testimony

Plaintiff argues the ALJ erred by rejecting his testimony regarding the severity of his symptoms. Pl. Op. Br. (Dkt. 21), pp. 14–16. In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Plaintiff testified he injured his back in June 2001 and stopped working due to his injury on October 17, 2002, the alleged onset date. *See* AR 128, 1014. Plaintiff testified

he cannot sit, stand, or walk for very long due to back pain. *See* AR 130, 232, 236–37.

Plaintiff testified he could stand for 15–20 minutes at a time before his legs would start

to go numb and he would get back pain. AR 131–32. Plaintiff reported he could not walk

for longer than five minutes at a time due to pain. AR 232. Plaintiff reported his back

pain also limited his ability to lift, squat, bend, kneel, and climb stairs. AR 237.

The ALJ found plaintiff's testimony was "not entirely consistent with the medical

evidence and other evidence in the record." AR 848. The ALJ reasoned plaintiff's

testimony was inconsistent with "the longitudinal history of the treatment notes," which

the ALJ determined show "good relief with injections and partial relief with medication."

AR 850.

The ALJ erred in rejecting plaintiff's symptom testimony. The ALJ summarized

plaintiff's medical treatment from the alleged onset date of October 17, 2002 to the date

last insured of December 31, 2006. *See* AR 848–50. But the ALJ failed to explain how

that evidence contradicted plaintiff's testimony. The ALJ noted an MRI of plaintiff's

lumbar spine from July 2001 showed disk herniations at T12-L1, L1-2, L3-4, and L4-5.

AR 341. Plaintiff had two epidural steroid injections by November 2002, but continued to

have "quite severe pain." AR 449. Plaintiff declined a third injection "as he had some

complications related to the second one." *Id.* An MRI from January 2003 revealed "[m]ild

canal stenosis at the L3/L4 level caused by a combination of disc bulge and right

paracentral disc protrusion versus small disc herniation," and a disc bulge at L4-5. AR

352. Plaintiff had a left L3 selective nerve root block in early 2004. AR 444. An MRI from

August 2004 showed "herniated T12-L1 and L4-5 disks on the left," as well as "[m]ild to

moderate degenerative change of the disks at L1-2 and L3-4." AR 353. Around August

2005, plaintiff had a selective nerve root block at L4 that did not help, and a nerve root block at L5 that "made a substantial improvement for a period of weeks." AR 431. Plaintiff received two more injections at L5 in October 2005, and January 2006. AR 425, 428. Plaintiff reported he did not get lasting pain relief from these injections. *See* AR 423. Plaintiff received another injection at L5 in May 2006. AR 421. Plaintiff underwent another MRI on September 13, 2006, which his doctor reported "confirms improvement of the poster [sic] lateral disk herniation at L4-5," and showed plaintiff continued to have a disc herniation at T12-L1, and disc protrusion at L3-4. AR 417–19.

The ALJ summarized this evidence, but failed to explain how any of it contradicted plaintiff's testimony. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the claimant's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Plaintiff received temporary pain relief from spinal injections on a few occasions, but continued to report significant pain, and imaging documented objective evidence of lumbar spine problems. The ALJ failed to explain how any of this was inconsistent with plaintiff's claims, and thus failed to give a clear and convincing reason to reject plaintiff's symptom testimony.

The ALJ's error here was harmful. An error is harmless if it is "'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1117 (quoting *Carmickle*, 533 F.3d at 1162). The ALJ's errors here were consequential because he may have included additional limitations in the RFC assessment and hypotheticals to the

vocational expert if he had properly evaluated plaintiff's testimony. The RFC and step five determination were therefore not supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (holding ALJ's RFC assessment and step five determination were not supported by substantial evidence where RFC and hypotheticals to vocational expert failed to include all of the claimant's impairments). The ALJ thus harmfully erred in rejecting plaintiff's testimony regarding the severity of his symptoms.

### B.   The ALJ Harmfully Erred in Rejecting Dr. Kinahan's Opinions

Plaintiff argues the ALJ failed to give legally sufficient reasons to reject Dr. Kinahan's opinions. Pl. Op. Br., pp. 5–11. Dr. Kinahan was plaintiff's treating orthopedic surgeon. *See* AR 2250. Dr. Kinahan gave multiple opinions throughout the record. Plaintiff cites to one opinion from April 2003, and five opinions from May 2005 to January 2007. *See* Pl. Op. Br., p. 5; AR 1171–75, 2250. In a letter dated April 4, 2003, Dr. Kinahan opined plaintiff "has been disabled from full-time sedentary work since June 27, 2001." AR 2250. Dr. Kinahan also completed time-loss notification forms, including those dated May 24, 2005, January 24, 2006, August 25, 2006, October 2, 2006, and January 4, 2007, all stating plaintiff was "unable to perform any type of work activity" from June 2001 to the date on the form. AR 1171–75.

The ALJ in his decision cited to different opinions from Dr. Kinahan, although they were essentially the same in content as those plaintiff cited. *See* AR 851. In a letter dated November 14, 2002, Dr. Kinahan opined plaintiff was "unable to work" from March 26, 2002, the date on which Dr. Kinahan first saw plaintiff, through the date of the letter. AR 511. The ALJ also cited to a series of forms Dr. Kinahan, which included time-loss

notification forms like those plaintiff cited, as well as an estimated physical capacities evaluation from June 4, 2002. *See* AR 1160–61, 1166–67, 1170–75. In the time-loss notification forms, Dr. Kinahan opined plaintiff was unable to return to any type of work from June 26, 2001, through the date of each form. AR 1160, 1166–67, 1170–75. In the June 2002 estimated physical capacities evaluation, Dr. Kinahan opined plaintiff could sit, stand, and walk for thirty minutes to an hour at a time, for two to three hours total in an eight-hour workday. AR 1161. Dr. Kinahan opined plaintiff could lift and carry up to five pounds frequently, and up to 20 pounds occasionally. *Id*. Dr. Kinahan opined plaintiff could occasionally bend, squat, crawl, climb, and reach above shoulder level. *Id*. The ALJ last cited to Dr. Kinahan's April 2003 letter, to which plaintiff also cited. *See* AR 851, 2250.

The ALJ rejected Dr. Kinahan's opinions. AR 851. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo*, 871 F.3d at 675 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Trevizo*, 871 F.3d at 675. [1] In either case, substantial evidence must support the ALJ's findings. *Id*. Dr. Kinahan's opinions were contradicted by at least the opinions of J.D. Fitterer, M.D., and Robert Hander, M.D., so the ALJ needed to provide specific and legitimate reasons to reject them. *See* AR 152–54, 166–68.

---

[1] The Social Security Administration has amended regulations for evaluating medical evidence, but the amended regulations apply only to claims filed on or after March 27, 2017, and therefore are not relevant to this case. *See* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017); 20 C.F.R. § 404.1520c (applicable to claims filed after March 27, 2017).

ORDER REVERSING AND REMANDING – FOR AN
AWARD OF BENEFITS - 7

1    The ALJ first rejected Dr. Kinahan's June 2002 estimated physical capacities

2    evaluation because that evaluation predated plaintiff's alleged onset date; and second,

3    the ALJ stated that "even if adopted, the vocational expert opined that it would not

4    preclude the claimant from being able to perform other light jobs." AR 851.

5    There is not substantial evidence in the record to support either of these reasons.

6    The ALJ's decision includes evidence -- from over a year prior to the alleged onset date

7    -- showing lumbar spine abnormalities existed before the alleged onset date of October

8    17, 2002. *See* AR 848 (citing AR 341, 356). Plaintiff testified the alleged onset date was

9    chosen because that is when his employment ended, not because of any worsening of

10   his symptoms from the date of injury in June 2001 to the alleged onset date. *See* AR

11   127–29. The ALJ failed to discuss the medical record of lumbar spine abnormalities

12   starting in June 2001, and this lack of discussion undermines the ALJ's finding that Dr.

13   Kinahan's opinion was entitled to less weight because it was from prior to the alleged

14   onset date.

15   The ALJ's second reason does not withstand scrutiny because the vocational

16   expert's testimony and the RFC do not entirely account for Dr. Kinahan's opinions. The

17   ALJ found in the RFC that plaintiff could perform sedentary work with additional

18   reaching, postural, and environmental restrictions. AR 847–48. The vocational expert

19   testified if plaintiff were limited to sitting, standing, and walking three hours each in a

20   workday, then sedentary work would be precluded. AR 876. The vocational expert

21   further stated that if plaintiff were limited to light work, with restrictions of sitting,

22   standing, and walking three hours each in a workday, with lifting limited to a maximum

23   of 20 pounds, there were jobs that plaintiff could perform. AR 876–77. But this alternate

24

25

statement did not fully account for Dr. Kinahan's June 2002 opinion, because it did not include a restriction to lifting five pounds frequently, and occasional bending and squatting. *See* AR 874, 876–77, 1161. The ALJ therefore harmfully erred in rejecting Dr. Kinahan's June 2002 opinion based on the vocational expert's testimony.

The ALJ next rejected Dr. Kinahan's other opinions "because they are conclusory, do not contain a function by function assessment of [plaintiff's] limitations, or infringe upon an issue reserved to the Commissioner (i.e. whether the claimant is disabled)." AR 851. The ALJ is not bound by a doctor's opinion on the ultimate issue of disability, but must still give valid reasons for rejecting that opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so." (internal quotation marks and citations omitted)).

In this situation, Dr. Kinahan's opinion was not explicitly on an issue reserved to the Commissioner. Rather, Dr. Kinahan said plaintiff could not perform any work activity. This leads to the conclusion that plaintiff was disabled, but it is still an assessment of his function, or lack of it, rather than an assessment of whether he meets the requirements for Social Security disability. The ALJ's finding that Dr. Kinahan's opinion was on the ultimate issue of disability was therefore not accurate and not a valid reason on its own to reject that opinion.

The ALJ rejected Dr. Kinahan's other opinions because a September 2016 MRI did not show compression at any level of the lumbar spine. AR 851. The ALJ failed to

explain why an MRI from nearly ten years after the date last insured was substantial

evidence of plaintiff's condition from the alleged onset date in October 2002 to the date

last insured in December 2006. This was therefore not a valid reason to reject Dr.

Kinahan's opinions.

The ALJ also rejected Dr. Kinahan's opinions as "not fully consistent with his

examination findings, which regularly showed normal motor, sensory, [and] vascular

function." AR 851. An ALJ cannot cherry-pick the evidence, and the doctor's

observations "must be 'read in context of the overall diagnostic picture' the provider

draws." *Ghanim*, 763 F.3d at 1161–62 (quoting *Holohan v. Massanari*, 246 F.3d 1195,

1205 (9th Cir. 2001)). The records to which the ALJ cited documented worsening of

plaintiff's condition, obvious discomfort in his lumbar spine, restricted range of motion,

and pain with straight leg raise. *See* AR 2138–39, 2142, 2231, 2237. The ALJ's

reasoning was thus not supported by substantial evidence.

As a final note regarding Dr. Kinahan, the ALJ was "somewhat persuaded" by an

opinion from Dr. Kinahan dated April 13, 2007. AR 850, 1094. Because the ALJ erred in

rejecting Dr. Kinahan's opinions from prior to the date last insured, he must reevaluate

his consideration of Dr. Kinahan's April 2007 opinions, as correction of the ALJ's errors

may result in a different evaluation of the April 2007 letter.

In sum, the ALJ failed to give valid reasons for rejecting all of Dr. Kinahan's

opinions. The ALJ's errors were harmful. Had the ALJ properly considered Dr.

Kinahan's opinions, he may have included additional limitations in the RFC and

hypotheticals to the vocational expert. The RFC and step five determination were thus

not supported by substantial evidence. *Lingenfelter*, 504 F.3d at 1040–41.

**C.    The ALJ Harmfully Erred in Rejecting the Examining Physicians' Opinions**

Plaintiff argues the ALJ failed to give legally sufficient reasons for rejecting the opinions of examining physicians Dr. Green, Dr. Fishel, Dr. Isaacs, and Dr. Price. Pl. Op. Br., pp. 11–14. These doctors' opinions were contradicted by at least the opinions of Dr. Fitterer, and Dr. Hander. *See* AR 152–54, 166–68. The ALJ therefore needed to give specific and legitimate reasons to reject them. *See Lester*, 81 F.2d 830–31.

       1.    <u>The ALJ Harmfully Erred in Rejecting Dr. Green and Dr. Fishel's Opinions</u>

Dr. Green and Dr. Fishel conducted a joint independent medical examination of plaintiff on September 19, 2003. AR 355–63. Dr. Green and Dr. Fishel opined plaintiff was "unable to work in any position currently." AR 361. They opined plaintiff was "completely limited from any physical activity." AR 362.

The ALJ rejected Dr. Green and Dr. Fishel's opinions because they did not give a function-by-function assessment, and were rendered for the purposes of plaintiff's Washington Labor and Industries ("L&I") claim, "which is a different inquiry than the one used by [the Social Security Administration]." AR 851. Neither reason withstands review.

The ALJ erred in rejecting Dr. Green and Dr. Fishel's opinions based on their failure to give a function-by-function assessment. A finding that plaintiff is "completely limited from any physical activity" is no different than a finding that plaintiff cannot

perform each particular work function. The ALJ's reason here was therefore not supported by substantial evidence.

The ALJ further erred in rejecting Dr. Green and Dr. Fishel's opinions based on the fact that they were done for purposes of an L&I claim. An ALJ may not reject a medical opinion "with boilerplate language that fails to offer a substantive basis for" the ALJ's conclusion. *Garrison*, 759 F.3d at 1012–13. The ALJ failed to identify the differences between L&I and Social Security requirements that would diminish the relevance of the doctors' opinions. The inability to perform work activities is relevant under the Social Security requirements, so the ALJ's reasoning lacks specificity or a substantial evidentiary basis.

The ALJ's errors were harmful. Had the ALJ properly considered Dr. Green and Dr. Fishel's opinions, he may have included additional limitations in the RFC and hypotheticals to the vocational expert. The RFC and step five determination were thus not supported by substantial evidence. *Lingenfelter*, 504 F.3d at 1040–41.

.

### 2.   The ALJ Harmfully Erred in Rejecting Dr. Isaacs and Dr. Price's Opinions

Dr. Isaacs and Dr. Price conducted a joint independent medical examination of plaintiff on January 12, 2005. AR 365–77. The doctors opined plaintiff was "unable to work." AR 374. They opined: "In [plaintiff's] present condition, he appears to be unable to do any type of work because he cannot sit comfortably for more than 10 minutes. He cannot lift or flex his spine." AR 375. The doctors opined plaintiff needed surgery at L4-5, and was not fixed and stable. AR 374.

The ALJ rejected Dr. Isaacs and Dr. Price's opinions. AR 852. The ALJ reasoned the doctors' exam "was done for L&I purposes," and "d[id] not offer an assessment in vocational terms." *Id.* The ALJ rejected the doctors' opinion that plaintiff cannot sit "comfortably" for more than ten minutes because the ALJ was "tasked with determining the most the claimant can do and not simply the conditions under which he would be the most comfortable." *Id.* The ALJ rejected the doctors' opinion that plaintiff needed surgery because "subsequent records show that surgery was not indicated." *Id.*

The ALJ erred in rejecting Dr. Isaacs and Dr. Price's opinions. As with Dr. Green and Dr. Fishel's opinions, the ALJ failed to explain the distinctions between L&I and Social Security that would undermine the relevance of Dr. Isaacs and Dr. Price's opinions. *See Garrison*, 759 F.3d at 1012–13. That their exam was done for L&I purposes was thus not a specific and legitimate reason for rejecting Dr. Isaacs and Dr. Price's opinions.

The ALJ's conclusion that Dr. Isaacs and Dr. Price did not state their opinion in "vocational terms" also fails. That plaintiff could not sit comfortably for more than ten minutes, and could not lift or flex his spine are relevant findings that the ALJ could reasonably translate into vocational limitations. *Cf. Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Doctors are not required to give their opinions using specific words, so the ALJ's reasoning here fails.

The ALJ further erred in rejecting the doctors' opinions based on their statement that plaintiff could not sit "comfortably." The ALJ's reasoning did not adequately account for the context of Dr. Isaacs and Dr. Price's opinions, as their statements were not

1   focused on comfort, but on the explanations for why plaintiff could not perform any work

2   activity, such as his inability to sit comfortably for more than ten minutes, and his

3   inability to lift or flex his spine. *See* AR 375; *see also Reddick*, 157 F.3d at 722–23

4   (reversing ALJ's decision where his "paraphrasing of record material is not entirely

5   accurate regarding the content or tone of the record").

6         The ALJ did not err in rejecting Dr. Isaacs and Dr. Price's opinion that plaintiff

7   needed surgery. As the ALJ reasonably noted, records from after the doctors' exam

8   indicated plaintiff was not a candidate for back surgery. *See* AR 1086, 1091. This does

9   not undermine the remainder of the doctors' opinions, however, as the appropriate

10   course of plaintiff's treatment does not define the scope of his limitations.

11         The ALJ's errors in rejecting Dr. Isaacs and Dr. Price's opinions were harmful.

12   Had the ALJ properly considered Dr. Isaacs and Dr. Price's opinions, he may have

13   included additional limitations in the RFC and hypotheticals to the vocational expert.

14   The RFC and step five determination were thus not supported by substantial evidence.

15   *Lingenfelter*, 504 F.3d at 1040–41.

16

17       **D.**    **Remand for Award of Benefits**

18         Plaintiff asks the Court to remand this matter for an award of benefits. Pl. Op. Br.,

19   pp. 16–17. "'The decision whether to remand a case for additional evidence, or simply

20   to award benefits[,] is within the discretion of the court.'" *Trevizo*, 871 F.3d at 682

21   (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Except in rare

22   circumstances, the appropriate remedy for an erroneous denial of benefits is remand for

23

24

25

further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1043 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014)).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682–83 (quoting *Garrison*, 759 F.3d at 1020). Even when each element is satisfied, the district court still has discretion to remand for further proceedings or for an award of benefits. *See Leon*, 80 F.3d at 1045.

Here, as discussed above, the ALJ did not provide clear and convincing reasons for discounting Plaintiff's testimony; nor did the ALJ provide specific and legitimate reasons for discounting the opinions of Drs. Kinahan, Green, Fishel, Isaacs, and Price. The Court has already remanded this case once for a re-assessment of the evidence.

The Court is mindful that simply providing another opportunity to assess improperly evaluated evidence does not qualify as a remand for a "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021–22 (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

If Plaintiff's testimony, and the opinions of Drs. Kinahan, Green, Fishel, Isaacs and Price were credited as true, particularly Dr. Kinahan's opinion that Plaintiff could not perform any type of sedentary work, the ALJ would be required to find Plaintiff disabled

ORDER REVERSING AND REMANDING – FOR AN
AWARD OF BENEFITS - 15

1    on remand. AR 792, 868-71; *see Lingenfelter*, 504 F.3d at 1041 ("[W]e will not remand

2    for further proceedings where, taking the claimant's testimony as true, the ALJ would

3    clearly be required to award benefits.").

4         Accordingly, remand for an award of benefits is the appropriate remedy.

5    <u>CONCLUSION</u>

6         Based on the foregoing discussion, the Court finds the ALJ erred when he

7    determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore

8    is REVERSED and this matter is REMANDED for an award of benefits.

9         Dated this 30th day of September, 2021.

10

11

12

13    Theresa L. Fricke
     United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25